WHITEMAN BROTHERS, for use, etc., of W. P. Hickerson, v. AMERICAN CENTRAL INSURANCE CO.

INSURANCE, FIRE. *Substituted policy. Agent. Estoppel.* W. S. Whiteman procured several fire insurance policies, which were issued to him, losses, if any, to be paid to Whiteman Bros., a firm composed of W. S., James and Albert Whiteman. Nelson was his agent to procure the policies. After insurance a company issuing one of the policies notified Nelson that it desired to cancel the policy, and sent him a policy for same amount and similar provisions on another company to be substituted. Nelson saw Albert Whiteman, who assented to the substituted policy. Loss occurred before he saw W. S. Whiteman, and before the policy was delivered. Afterwards substituted policy was delivered and original policy surrend-

Whiteman Bros., for use, etc., v. Insurance Company.

ered: *Held,* the substituted company was liable, as the assent by one of the beneficiaries and partners was sufficient. *And held further,.* that Nelson, as to the substitution, was the agent of the company, and it was estopped to deny its liability.

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

DEMOSS & MALONE for Whiteman.

EAST & FOGG for Insurance Company.

COOKE, J., delivered the opinion of the court.

This was an action at law against the defendant upon a policy of fire insurance for $1,250, issued to W. S. Whiteman, losses, if any, payable to Whiteman Brothers, and which was assigned after loss to W. P. Hickerson, for whose use the suit is brought.

There was a verdict for the defendant. A motion for a new trial was overruled, and judgment entered upon the verdict, and the plaintiffs have appealed.

There was evidence tending to show the following facts, and which have been reported by the Referees: The firm of Whiteman Brothers was composed of W. S. Whiteman, the father, and his two sons, James and Albert. They were operating a paper mill. The building and ground upon which it was erected were the individual property of W. S. Whiteman, and the machinery and stock belonged to the firm, each partner owning an equal interest in the same, and all together being of the value of fifty thousand

dollars or over. In August, 1873, W. S. Whiteman applied to W. C. Nelson, an insurance agent and broker in Nashville, to procure $15,000 of insurance upon the property. The firm of Whiteman Brothers executed its note to Nelson for the amount of the premiums to be paid for the policies and his commission, which was discounted in bank by Nelson and paid by the firm, Nelson undertaking to pay the premiums to the companies from whom he might obtain the policies. He thereupon applied to Barber & Castleman, of Louisville, Ky., who were insurance brokers and agents of various insurance companies, and obtained from them a number of insurance policies of different companies, aggregating the amount of $15,000. Each of these policies covered separate amounts upon the mill, the machinery and the stock. Among them was one issued by the Black River Insurance Company for the aggregate amount of $1,250, of which $375 was on the mill, $675 on moveable machinery, and $200 on stock. All the policies were issued to W. S. Whiteman, with the provision that the loss, if any, payable to Whiteman Brothers. These policies, which were procured by Nelson in the manner above stated, were delivered to W. S. Whiteman. The policy issued by the Black River Insurance Company, and perhaps each of the others, contained a provision or stipulation that the assured might have it cancelled at any time he saw proper, allowing the company to retain a certain premium for the time which might have expired before his doing so, and that the company might cancel it by

giving the assured notice, and refunding the *pro rata* of premiums for the unexpired time. On October 4, 1873, Barber & Castleman notified Nelson that the Black River Insurance Company desired to cancel its policy, and at the same time they sent him instead a policy in the St. Joseph Insurance Company, in all respects similar. Before Nelson had an opportunity to see W. S. Whiteman, and make this exchange, Barber & Castleman wrote him, Nelson, that the St. Joseph Company wished to cancel its policy, and thereupon Nelson returned this last mentioned policy to them, and in two or three days thereafter they enclosed him a policy issued by the American Central Insurance Company, to be substituted for the aforesaid policy of the Black River Company, it being for the same amount, and containing in all respects the same terms and conditions. Nelson accepted in his own mind the American Central policy, and mentioned the facts of the proposed substitution to Albert Whiteman, one of the partners and beneficiaries, and he assented thereto, but never saw W. S. Whiteman, or notified him of the same, and within a few days thereafter the entire property was destroyed by fire. Within a day or two after the loss Nelson met W. S. Whiteman in Nashville, and requested of him a surrender of the Black River policy, and offered him instead the American Central policy. Whiteman refused to either surrender the one or accept the other until he could consult with his counsel. Thereupon he and Nelson went together to the legal adviser of Whiteman, and after

having been advised in reference to the matter, he surrendered the Black River policy to Nelson, who returned it to Barber & Castleman, and accepted the American Central policy, upon which this suit has been instituted, proof of loss having been made as required by the terms of the policy.

There was a plea *nil debit*, and notice that the defendant would rely upon the fact that the policy sued on was not delivered until after the loss.

The circuit judge, among other things, charged the jury that only W. S. Whiteman himself, or some one duly authorized by him, had the right or power to agree to the substitution of the policy sued upon in lieu of that of the Black River Insurance Company, and that nothing short of authority from him, such as would constitute the relation of principal and agent, would endow either Albert or James, the other members of the firm, with such right or power. He was requested by the plaintiff's counsel to charge that the assent of W. S. Whiteman, or either of the other members of the firm of Whiteman Brothers, to the substitution, would, if given before the loss, make the policy binding on the defendant. This was refused.

The jury, after having retired, returned into court for further instruction, when his Honor again repeated the above instruction with emphasis. They returned a second time and asked his Honor how it would be if Albert Whiteman, before the loss, had accepted the policy in suit? when the court told them there was no evidence of Albert's agency. Thereupon they

rendered a verdict for the defendant. The Referees report that the above instruction, as well as the refusal of the court to give the instruction requested by the plaintiff was erroneous, and for that reason recommend that the judgment be reversed and a new trial awarded. They say, as the other questions discussed could not change this result, they are not reported upon. They also report that Nelson's agency for Whiteman terminated upon the delivery by him to W. S. Whiteman the original policies covering the $15,000, and including the policy of the Black River Insurance Company; that the substitution of any other policy for this one was not contemplated or thought of in that transaction; that this proposition to substitute its policy in lieu of that of the Black River Company came from the American Central Company to the assured, through Nelson, and for the purposes of this proposed substitution Nelson was the agent of both the Black River and the American Central Company, and was not the agent of W. S. Whiteman in any sense for these purposes, and hence his supposed acceptance of the one policy in lieu of the other was not binding upon the assured, and neither extinguished his rights under the policy of the former, nor gave him any rights under that of the latter; that as W. S. Whiteman himself had not heard of the proposition to substitute until after the loss, unless the acceptance by Albert Whiteman, and his agreement to take the American Central policy in lieu of the Black River policy, was effectual to complete the contract with the American Central Com-

pany, the contract was not consummated at all during the existence of the property intended to be insured, and that if Albert had such power it proceeded alone from his relation to the property covered and the policy first issued, and from the fact that he was a member of the firm of Whiteman Brothers, and as such was both beneficiary in the policy and one-third owner of the movable machinery and stock insured in that policy at $875, and as partner, was for partnership purposes beneficiary to the full extent of the $1,250, and interested as owner of the property to the extent of $875, his interest in the policy as beneficiary being equal to that of the assured himself, they conclude that he could lawfully negotiate with the agent of both companies and make a binding contract of substitution. Hence they find the charge of the court upon this question, as well as his refusal to charge as requested, to be erroneous, as before stated.

They also report that it is pretty clear that the defendant is estopped from denying its liability on the policy in suit, as by its theory the Black River policy was in force at the time of the loss, and that the defendant, by its agent, Nelson, induced W. S. Whiteman to surrender that policy and accept the one sued upon in lieu of it. But they further report that as this question was not directly raised by the pleadings, nor by request for instruction to the jury, it cannot properly be determined here.

To this report there have been filed but three exceptions, which are by the defendant, and are as follows:

First, The Commission erred both in law and in fact in finding that Nelson was the agent of either or both the insurance companies mentioned.

Second, The Commission is in error in finding that Albert Whiteman was empowered by virtue of his relation either as partner or conditional beneficiary under the policy to give up the Black River policy or the substitution of the American Central.

Third, For causes stated in the argument and brief herewith filed.

No brief or argument, however, appears to have been filed with these exceptions. An elaborate brief and argument has been furnished us by the counsel for the defendant, but it has never been filed, and constitutes no part of the exceptions.

It is questionable at least whether these exceptions are sufficient for any purpose under the direct and positive terms of the act creating the Commission of Referees; yet, as in the view we have taken of the case, it will have to go back for another trial, we have thought it best to determine the main question attempted to be raised by the exceptions.

It will be readily seen that the only question raised by the report of the Referees, and these exceptions, is as to the correctness of the above cited instruction, and in accordance with our repeated holding is the only one which we can consider. As the policy of the Black River Company was made payable to the firm of Whiteman Brothers, the partnership had a vested right in the proceeds which could not be divested without the consent of the firm: 1

Lea, 454, and authorities there cited.    And this interest being partnership property, either partner had a right to dispose of it for the benefit of the firm. Albert Whiteman, therefore, being a partner, and conducting the business of the partnership in Nashville, had the right to dispose of this interest by agreeing to a substitution of the policy sued on for the Black River policy, and there being evidence tending to show that he did so before the loss, we conclude with the Referees that the charge of the court as given upon this question was erroneous, and the plaintiffs were entitled to the instruction requested by them.

There have been a number of other questions of very grave interest discussed, but as there has been no report upon any of them by the Referees, and no exceptions have been taken by either party, on that account they are not open for consideration.

We think the Referees were correct in their conclusion that the sending the policy sued on by the American Central Company through its agents, Barber & Castleman, to Nelson, to be tendered the plaintiffs in lieu of the Black River policy, did constitute him the agent of said company for that purpose.

The exceptions to the report will therefore be overruled, the report confirmed, and a new trial awarded.